UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SME HOLDINGS, LLC
*d/b/a* STERLING
MANUFACTURING AND
ENGINEERING,

    Plaintiff,

v.

THE TOOL CRIB, INC.
OF KNOXVILLE, TENNESSEE,

    Defendant.

Case No. 19-12698
Honorable Laurie J. Michelson
Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER
DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT [18][19]**

The parties are manufacturing parts suppliers who have done business together for over thirty years. They came to this Court to resolve a disagreement about a delivery deadline.

Plaintiff/Counter-Defendant SME Holdings, LLC, d/b/a Sterling Manufacturing and Engineering ("Sterling") produces specialty gauges for automobiles. Defendant/Counter-Plaintiff The Tool Crib, Inc. of Knoxville, Tennessee[1] ("Tool Crib") is a parts distributor that pairs manufacturers with suppliers.

---

[1] Tool Crib says that it has been incorrectly identified in court filings as "The Tool Crib, Inc." and its correct name is "The Tool Crib, Inc. of Knoxville, Tennessee." (ECF No. 18, PageID.146.)

To fulfill a customer order for specialty auto gauges, Tool Crib ordered the gauges from Sterling. Tool Crib promised its customer that the gauges would be delivered by July 23, 2018, but then hired Sterling to supply the parts without setting a fixed date for delivery. The parties dispute whether the date range of "17–18 weeks" in the contract was an estimate or a deadline and each side has filed a motion for summary judgment arguing they are entitled to a judgment as a matter of law. For the reasons given, the Court will deny both motions.

## I. Background

Sterling and the Tool Crib largely agree on the factual record and the applicable law. They agree on all of the following facts except where otherwise noted.

Sterling and Tool Crib entered into a contract for three specialty auto gauges without a date certain for delivery. Following a customer inquiry for three of the gauges, Tool Crib requested quotes from Sterling to design and build them. (ECF No. 1, PageID.16–27.) Sterling provided quotes for the three gauges that stated: "Delivery: Design & Build: 17-18 Weeks A.R.O [after receipt of order]." (ECF No. 1, PageID.18, 22, 26.) Tool Crib copied this and other relevant terms into its proposal to the customer, JTEKT. (ECF No. 18-4, PageID.349, 353, 356.) JTEKT agreed with the proposal and submitted a purchase order to Tool Crib on June 5, 2018. (ECF No. 18-5.) JTEKT's purchase order modified the delivery date and stated that the gauges would be delivered by July 23, 2018. (See ECF No. 18-5, PageID.360–361.) So Tool Crib contracted to provide the gauges to its customer by July 23, 2018. But Tool Crib did not insist on the same deadline in its order from Sterling.

To order the gauges, Tool Crib copied Sterling's original quotes into purchase orders and issued them to Sterling. (ECF No. 1, PageID.18, 22, 26, 29.) Tool Crib's purchase orders expressly referenced Sterling's three quotes and did not provide any additional or contrary terms regarding delivery. (*Id.*) Tool Crib's purchase orders stated: "Please acknowledge receipt of this purchase order by verifying pricing and delivery by email." (ECF No. 1, PageID.29.) Sterling did so and responded by email: "Thank you for this order. Pricing is O.K. Delivery should be 17-18 weeks as quoted." (ECF No. 19-3, PageID.482.) A document produced by Tool Crib shows that a Tool Crib employee printed this email and wrote by hand: "est. 10/13/18" which was 17-18 weeks later. [accurate?] (ECF No. 18-6, PageID.364.)

The parties disagree on the deadline for delivery this exchange created. Tool Crib argues that this exchange imposed a firm deadline 18 weeks from the date of the order, which was October 13, 2018. Sterling argues that it was an estimate only, evidenced by Sterling's confirmation email treating it as an estimate and the handwritten note by a Tool Crib employee.

The eighteen weeks passed. Beginning on October 17, 2018—four days past the alleged deadline—and then repeatedly throughout the next several months, Sterling advised Tool Crib of supplier delays. (*See* ECF No. 19-3.)

Tool Crib first requested a status update on October 17th. (*Id.* at PageID.483.) Sterling responded the same day and advised that "Delivery is approximately the middle to end of November." (*Id.* at PageID.482.) On October 22nd, Sterling emailed JTEKT, copying Tool Crib, to request some additional details for the design. (*Id.* at

3

PageID.485.) JTEKT responded and provided some of the requested information (without commenting on the delay). (*Id.* at PageID.485.) JTEKT emailed Sterling that they were "working on getting" the rest. (*Id.*)

On December 5th, Sterling emailed Tool Crib and advised them of continued supplier delays, estimating that "we may not see the [parts] until mid-January or later now." (*Id.* at PageID.486.) Tool Crib responded: "We have got to step on the accelerator for all three of these gauges. . . . Can you assemble everything right now and then add the [delayed parts] when they are ready? Would this reduce the time any? We have got to do something . . ." (*Id.*) Sterling apologized again and stated: "We will proceed with whatever we can do at this time to show progress but the timing is still as noted." (*Id.*) The record indicates that Tool Crib did not respond. (*See* ECF No. 18-11; ECF No. 19-3.)

On December 12th, Sterling sent a progress report to Tool Crib: "Nothing good or new. We offered to help [the sub-supplier] anyway possible but they declined . . . We are no further along today than we were last week because we need the [delayed parts]. I will stay on top of this the best possible." (ECF No. 19-3, PageID.488.) Tool Crib asked Sterling to confirm that the sub-supplier would ship the delayed parts on December 16th and inquired how long Sterling would need for assembly before Tool Crib could visit "for the runoff," which appears to be some form of progress check or joint testing. (*Id.* ("We need to schedule our trip as soon as we can.").) Any direct response is not in the record. The same day, a second person at Tool Crib emailed Sterling to ask whether the order had shipped. Sterling responded: "I just sent a

4

progress report to Steve Summers. The revised delivery date is now 2/14/2019." (ECF No. 19-3, PageID.48.) The record indicates that Tool Crib did not respond or otherwise protest. (ECF No. 18-12, PageID.414.)

On January 10, the customer, JTEKT, emailed both Tool Crib and Sterling and asked for a date to "runoff the gauges": "I need to make travel arrangements now. I also need an update with pictures of the status so far." (ECF No. 19-3, PageID.49.) Sterling responded with pictures and explained the delays. (*Id.*) Sterling did not offer a firm date for the runoff: "We are hoping . . . the last week of February . . . However it is to[o] early for me to say this date for sure . . ." (*Id.*) Sterling apologized for the delays and estimated that it would "have a better idea" for dates "in a couple of weeks." (*Id.*) A few hours later, Sterling emailed JTEKT and Tool Crib again and offered to cover all expenses for JTEKT to come test the first of the three gauges during the week of January 23. (ECF No. 19-3, PageID.495.) Sterling estimated that the other two "should be ready the week of February 25th for them to be run off." (*Id.*)

JTEKT canceled its order with Tool Crib three days later. (ECF No. 19-3, PageID.494.) JTEKT cited Sterling's delays as the reason for the cancellation: "[Sterling's] last email said he would 'shoot for the last week of February' but 'it is too early for me to say this date for sure'. Really? Your lead time was 17-18 weeks from PO. This would make due date 10/9/18 at the latest. It is now mid-January." (*Id.*) Tool Crib forwarded the cancellation to Sterling and said, "Please give us some direction. They have cancelled the order with us." (ECF No. 19-3, PageID.494.)

5

Tool Crib canceled the order with Sterling the next day on January 15th, explaining that it had "pursued every avenue possible to salvage . . . this order" but it "was placed with Sterling on 6-6-18 and confirmed by Colleen for delivery on 10-13-18. As you know as of today 1-15-19 we are still 3-6 weeks from completing this order. JTEKT has found this unacceptable." (ECF No. 18-17, PageID.432.) After receiving the cancellation, Sterling invoiced Tool Crib $218,505.00, the full price of the gauges. (ECF No. 18-19, PageID.436.)

The parties agree that the contract allowed Tool Crib to cancel the order for any reason. (ECF No. 1, PageID.19, 23, 30.) And they agree the contract imposed a cancellation fee. (*See id.*) The dispute is who breached first: Sterling, by failing to deliver the gauges more than four months after the original delivery estimate, or Tool Crib, by cancelling the order without paying the termination fee?

Sterling filed this suit to recover the cost of the cancellation fee. (ECF No. 1.) Sterling asserts a claim for breach of contract and a claim for account stated (to collect on the outstanding invoice for the cancellation fee). (*Id.* at ECF No. 1, PageID.12–13.) Tool Crib refused to pay and filed a countersuit for breach of contract, asserting that Sterling committed the first material breach by failing to deliver the gauges "within a reasonable time" under Michigan law. (ECF No. 11, PageID.87.)

The parties have now filed cross-motions for summary judgment. (ECF Nos. 18, 19.) The parties have provided substantial briefing that enables resolution of the motion without the need for further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it not necessary that either party is entitled to summary judgment; it is possible that neither party meets their burden. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Sterling's motion, the evidence is viewed in the light most favorable to the Tool Crib and the initial (and ultimate) burden is on Sterling to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering the Tool Crib's motion. *See id.*

## III. Discussion

Each of the parties is partially correct. Tool Crib is correct that there is a compelling argument that Sterling breached an unambiguous deadline, in which case, Sterling cannot enforce the cancellation fee.

7

But even assuming the contract did impose a deadline of 18 weeks for delivery, Sterling is correct that Tool Crib waived that breach by encouraging Sterling to continue to perform the contract even after Sterling gave notice that it would not meet that deadline. On December 5th, nearly two months past the purported October 13th deadline, Tool Crib urged Sterling to continue to perform the contract: "We have got to step on the accelerator for all three of these gauges. . . . We have got to do something . . ." (ECF No. 19-3, PageID.486.) And when Sterling responded that it could not speed up the delivery—"the timing is still as noted"—Tool Crib did not respond by cancelling the contract or giving any indication that it considered Sterling to be in breach. (*See* ECF No. 18-11; ECF No. 19-3.) By urging Sterling to continue to perform the contract, and giving no indication of termination in response to any of Sterling's disappointing status updates, Tool Crib elected to waive the breach and continue performance. *See, e.g.*, *Schnepf v. Thomas L. McNamara, Inc.*, 93 N.W.2d 230, 232 (Mich. 1958) ("Where there has been a material breach which does not indicate an intention to repudiate the remainder of the contract, the injured party has a genuine election either of continuing performance or of ceasing to perform. Any act indicating an intent to continue will operate as a conclusive election, not indeed of depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part.") (citation omitted); *Stanwood Motor Sports Acquisition, L.L.C. v. Arnold*, No. 313994, 2014 WL 1515373, at *5 (Mich. Ct. App. Apr. 17, 2014) (Waiver "may be inferred by the parties' acts or conduct.") (citations omitted). A waiver of contract rights "can be established

by clear and convincing evidence that the parties mutually agreed to a modification or waiver of the contract." *Quality Products and Concepts Co v Nagel Precision, Inc.*, 666 NW2d 251, 257 (Mich. 2003). The evidence here is clear and convincing— indeed, there is no evidence in the record to indicate that Tool Crib did not agree to modify the delivery date.

And Tool Crib seems to acknowledge the waiver by devoting most of their analysis to whether Sterling delivered within a "reasonable time" under MCL 440.2309(1), even though they present the discussion arguendo. (*See* ECF No. 18, PageID.165–167.) So the Court concludes that there is no genuine dispute on this point: even assuming Sterling breached the original October deadline, Tool Crib waived that breach and elected to continue performance. But that does not fully resolve the case.

Even if Tool Crib waived delivery by October, Sterling is not automatically entitled to summary judgment that Sterling was not in breach and therefore Tool Crib breached by not paying the cancellation fee. Contracts for the sale of goods do not allow indefinite delivery obligations. The parties agree that if a waiver renders the deadline in the contract unenforceable (or if the October deadline was just an estimate), then Michigan law imposes the UCC requirement for delivery of goods within a reasonable time. Mich. Comp. Laws § 440.2309(1). Given Tool Crib's waiver of the October deadline, at what point would Sterling's continued delay constitute a breach of its duty to eventually deliver? Did Tool Crib also waive Sterling's resulting duty to deliver the goods within a reasonable time?

9

"The rule in Michigan is that the one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 198 N.W.2d 702, 206 (Mich. Ct. App. 1972). And even under the "reasonable time" statutory delivery period, the Michigan Commercial Code entitles a party to cancel a contract if products are not delivered on the agreed upon date. *Surefil, LLC v. Bonne Bell, LLC*, No. 1:09-CV-379, 2010 WL 3059209, at *4 (W.D. Mich. Aug. 4, 2010) (citations omitted).

Sterling argues that Tool Crib has not shown what a reasonable delivery deadline should have been, and that this is a question of fact for a jury. (ECF No. 21, PageID.731.) Sterling asserts that the Court must deny Tool Crib's motion for summary judgment because Tool Crib has not provided any evidence for this Court to conclude as a matter of law that a reasonable delivery deadline passed. (ECF No. 21, PageID.732.) Tool Crib counters that this is a legal question the Court can decide now because Sterling never delivered the gauges by *any* date. (ECF No. 22, PageID.771.)

But the question is not whether Sterling *ever* delivered the gauges; the question is whether Sterling was in breach when Tool Crib cancelled the contract such that Tool Crib was not in breach for failing to pay Sterling the cancellation fee. So the issue before the Court is whether a reasonable time for delivery had passed by the time Tool Crib canceled the contract on January 15, 2019. (Or, putting the same question slightly differently: whether by January 15, 2019 the parties had notice that Sterling would be unable to tender delivery before a reasonable time had passed.

10

Whether measuring in terms of notice or not, the issue is the same.) If a reasonable time had passed by that point, then Sterling was in breach and Tool Crib was entitled to cancel the contract without penalty. If a reasonable time had not yet passed, then Tool Crib breached the contract first by canceling without paying the penalty.

What is a reasonable time "depend[s] on such factors as the nature of goods to be delivered, the purpose for which they are to be used, the extent of seller's knowledge of buyer's intentions, transportation conditions, the nature of the market, and so on." *Walter Toebe Const. Co. v. Kard Welding, Inc.*, No. 05-73605, 2007 WL 4218961, at *7 (E.D. Mich. Nov. 29, 2007) (citing White & Summers, Uniform Commercial Code § 3-5 (5th ed. 2000)). A court may imply a reasonable time into a contract as a matter of law. *See, e.g., Skyline Prod., Inc. v. Posen Const., Inc.*, 430 F. App'x 485, 495 (6th Cir. 2011).

But on the record before the Court here, it is not possible to imply a reasonable time for delivery because neither party has offered any evidence from which the Court could deduce what constituted a reasonable time. The parties dispute the significance of their communications. And neither party offers a fully persuasive or undisputed narrative of events. For example, Sterling's evidence is not wholly supportive of its position—internal communications among employees suggest that Sterling believed the deadline was indeed October or shortly thereafter. (ECF No. 18-10, PageID.404–405.) Given this conflicting record—and the lack of any proposed deadline that could have been reasonable after Tool Crib urged Sterling to continue performance—it is an open question of fact whether a reasonable time for delivery had passed when Tool

11

Crib canceled the contract (or whether the parties had effective notice that Sterling would soon be unable to meet that deadline).

So neither party is entitled to summary judgment on this record. At summary judgment, the Court takes all evidence and construes the record in the light most favorable to the non-moving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Neither party has shown that they prevail from that view. Taking the evidence in a light most favorable to either party, the Court would have to substitute its own assessment of the facts for the jury's in order to define a reasonable time for delivery based on the parties' communications and their conduct. At summary judgment, "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Accordingly, taking the evidence in the light most favorable to Tool Crib, and assuming that Sterling breached an express deadline provided in the contract, Tool Crib waived that breach, the Court cannot conclude from the record that Sterling was still indisputably within a reasonable time period for delivery in January 2019, three months past the original estimated delivery date on a very specialized project. The Court therefore denies summary judgment in favor of Sterling on both its breach of contract and account stated claims.

And taking the evidence in a light most favorable to Sterling, even recognizing Tool Crib's waiver of the original deadline, the Court cannot conclude from this record

whether the reasonable time period for delivery was still running when Tool Crib canceled the contract. The Court denies summary judgment in favor of Tool Crib.

## IV. Conclusion

For these reasons, Sterling's motion for summary judgment is DENIED and the Tool Crib's motion for summary judgment is DENIED.

The Court therefore issues the following notice regarding trial scheduling. As the state has lifted its coronavirus restrictions, this District has resumed limited in-court criminal proceedings. It will resume in-court civil proceedings, including jury trials, in September 2021. The Court will issue a scheduling order setting the final pretrial and trial dates in this matter. Due to the pandemic, however, the Court faces a substantial backlog of civil cases that are ready for jury trial, so a trial date for this matter will not be immediately available.

The parties are encouraged to undertake settlement efforts prior to receiving their trial date. The parties should let the Court's case manager know if they wish to schedule a settlement conference with the Court or submit the Court's sample order for private facilitation if they prefer that route.

SO ORDERED.

Dated: August 30, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE